1  E. JEFFREY GRUBE (SB# 167324)
   LAURA N. MONFREDINI (SB# 221153)
2  EMILY J. RATTÉ (SB# 233241)
   PAUL, HASTINGS, JANOFSKY & WALKER LLP
3  Twenty-Fourth Floor
   55 Second Street
4  San Francisco, CA  94105-3441
   Telephone: (415) 856-7000
5  Facsimile: (415) 856-7100

6  Attorneys for Defendant
   UNITED PARCEL SERVICE, INC.
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11 | PAUL LEWIS,                          | CASE NO. C 05 – 02820 WHA (JCS)
12 |        Plaintiff,                    | **DEFENDANT UNITED PARCEL SERVICE, INC.'S REPLY IN SUPPORT OF DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**
13 |   vs.                                |
14 | UNITED PARCEL SERVICE, INC., an      |
   | Ohio Corporation; and DOES 1-100,    |
15 | inclusive,                           |
16 |        Defendant.                    | Hearing Date:   October 6, 2005
                                            Time:            8:00 a.m.
17                                          Location:        Courtroom 9, 19th Floor
                                            Judge:           Hon. William H. Alsup

18

19

20

21

22

23

24

25

26

27

28

CASE NO. C-05-02820 WHA (JCS)           UPS'S REPLY IN SUPPORT OF ITS MTN
                                        FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................... 1

II. LEWIS HAS NOT GOTTEN AROUND THE FACT THAT HE SUFFERED NO ADVERSE EMPLOYMENT ACTION ..................................................................... 2

III. LEWIS HAS NO CLAIM FOR "FAILURE TO ACCOMMODATE" ........................ 4

    A. Disability Accommodation: Lewis Admits He Never Asked For One .................. 4

    B. Disability Accommodation: Plaintiff's Complaint Asserts No Claim For This ........................................................................................................................ 4

    C. Religious Accommodation: Lewis Admitted That His Hairstyle Was Not A Bona Fide Requirement Of The Christian Religion ............................................ 6

    D. Religious Accommodation: Lewis Admitted That He Did Not Tell UPS His Desire Was Religion-Based ........................................................................... 7

IV. LEWIS PROVIDES NO EVIDENCE OR ARGUMENT TO OVERCOME THE NUMEROUS OTHER REASONS WHY THE CLAIMS THAT HE DID PLEAD IN HIS COMPLAINT FAIL AS A MATTER OF LAW ........................................... 7

    A. Disability Discrimination: Preempted By Labor Code Section 132a .................... 7

    B. Religious Discrimination: Lewis Presents No Evidence That UPS's Legitimate Non-Discriminatory Request That He Comply With Its Uniform Policy Was A Pretext For Unlawful Discrimination ................................ 8

        1. UPS Has A Clear Policy Regarding Its Uniform And Appearance Standards ................................................................................................... 9

        2. Lewis Cannot Create A Triable Issue By Quibbling With Mullan's Determination That His Hair Was Not Compliant With UPS's Policy ........................................................................................................ 9

        3. Lewis Cannot Create A Triable Issue By Misrepresenting The Record To Create A "Timing" Issue ........................................................ 10

        4. Lewis' Purported Comparative Evidence Does Not Show Pretext ........... 12

    C. Retaliation: Lewis Cannot Overcome Summary Judgment By Directly Contradicting His Deposition Testimony ............................................................ 13

    D. Harassment: Lewis Ignores The Law — He Fails To Show Severe Or Pervasive Harassment Based On Religion Or Disability ..................................... 14

    E. Emotional Distress: Lewis Does Not Dispute The Claim Is Superfluous ........... 14

V. ALTERNATIVELY, LEWIS FAILS TO SAVE ANY CLAIM FOR PUNITIVE DAMAGES ................................................................................................................ 15

# TABLE OF AUTHORITIES

Page

**CASES**

*Accardi v. Superior Court*,
  17 Cal. App. 4th 341 (1993) .................................................................................................. 14

*Agnew v. BASF Corp.*,
  286 F.3d 307 (6th Cir. 2002) .................................................................................................... 2

*Aragon v. Republic Silver State Disposal, Inc.*,
  292 F.3d 654 (9th Cir. 2002) .................................................................................................. 12

*Award Metals, Inc. v. Superior Court*,
  228 Cal. App. 3d 1128 (1991) ................................................................................................ 14

*Bagatti v. Department of Rehabilitation*,
  97 Cal. App. 4th 344 (2002) ..................................................................................................... 5

*Beckwith v. Career Blazers Learning Ctr.*,
  946 F. Supp. 1035 (D.D.C. 1996) ............................................................................................. 4

*Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*,
  277 F.3d 882 (7th Cir. 2001) .................................................................................................. 12

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
  222 Cal. App. 3d 1371 (1990) ................................................................................................ 14

*Chen v. County of Orange*,
  96 Cal. App. 4th 926 (2002) ................................................................................................... 11

*D'Amico v. Board of Medical Examiners*,
  11 Cal. 3d 1 (1974) ..................................................................................................... 8, 9, 11, 13

*EEOC v. AutoNation USA Corp.*,
  52 Fed. Appx. 327, 329 (2002) ................................................................................................. 7

*Flait v. North America Watch Corp.*,
  3 Cal. App. 4th 467 (1992) ....................................................................................................... 2

*Flores v. Preferred Tech. Group*,
  182 F.3d 512 (7th Cir. 1999) .................................................................................................. 10

*Friedman v. S. Cal. Permanente Medical Group*,
  102 Cal. App. 4th 39 (2002) .................................................................................................. 6, 7

*Gagnon v. Sprint Corp.*,
  284 F.3d 839 (8th Cir. 2002) .................................................................................................. 12

*Gallo v. Board of Regents of University of California*,
  916 F. Supp. 1005 (S.D. Cal. 1995) .......................................................................................... 8

# TABLE OF AUTHORITIES
(continued)

Page

*Garner v. Wal-Mart Stores, Inc.*,
    807 F.2d 1536 (11th Cir. 1987) ............................................................................................ 3

*Gibbs v. Consolidated Services*,
    111 Cal. App. 4th 794 (2003) .............................................................................................. 12

*Guz v. Bechtel National, Inc.*,
    24 Cal. 4th 317 (2000) ......................................................................................................... 14

*Hutson v. McDonnell Douglas Corp.*,
    63 F.3d 771 (8th Cir. 1995) ................................................................................................. 10

*Janken v. GM Hughes Electrics*,
    46 Cal. App. 4th 55 (1996) .................................................................................................. 14

*Kuhn v. Ball State University*,
    78 F.3d 330 (7th Cir. 1996) ................................................................................................. 12

*Martin v. Lockheed Missiles & Space Co.*,
    29 Cal. App. 4th 1718 (1994) .............................................................................................. 5

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) ............................................................................................................. 12

*Prilliman v. United Air Lines, Inc.*,
    53 Cal. App. 4th 935 (1997) ............................................................................................ 4, 5

*Rivera v. S. Pac. Transport. Co.*,
    217 Cal. App. 3d 294 (1990) ............................................................................... 8, 9, 11, 13

*Sauzek v. Exxon Coal USA*,
    202 F.3d 913 (7th Cir. 2000) ............................................................................................... 12

*Sengupta v. Morrison-Knudsen Co.*,
    804 F.2d 1072 (9th Cir. 1986) ............................................................................................. 12

*Soldinger v. Northwest Airlines*,
    51 Cal. App. 4th 345 (1996) ................................................................................................ 7

*Stallcop v. Kaiser Foundation Hospitals*,
    820 F.2d 1044 (9th Cir. 1987) ............................................................................................. 5

*Thomas v. Department of Corrections*,
    77 Cal. App. 4th 507 (2000) ............................................................................................... 4

*Thompson v. Williams*,
    211 Cal. App. 3d 566 (1989) ............................................................................... 8, 9, 11, 13

*Tiano v. Dillard Department Stores, Inc.*,
    139 F.3d 679 (9th Cir. 1998) ............................................................................................... 6

# TABLE OF AUTHORITIES
(continued)

Page

*Tidwell v. Meyer's Bakeries, Inc.*,
  93 F.3d 490 (8th Cir. 1996) .................................................................................. 2

*Villiarimo v. Aloha Island Air, Inc.*,
  281 F.3d 1054 (9th Cir. 2002) ............................................................................... 9

*Waggoner v. City of Garland*,
  987 F.2d 1160 (5th Cir. 1993) ............................................................................. 10

*Whelihan v. Espinoza*,
  110 Cal. App. 4th 1566 (2003) ............................................................................. 5

*White v. Ultramar, Inc.*,
  21 Cal. 4th 563 (1999) ........................................................................................ 15

**STATUTES**

Cal. Gov't Code § 12940(n) ....................................................................................... 4

Cal. Gov't Code § 12965 ............................................................................................ 5

Cal. Lab. Code § 132 ........................................................................................... 8, 13

Cal. Lab. Code §§ 3600 *et seq* .................................................................................. 8

## I. INTRODUCTION

This case comes down to a single issue — Lewis (for personal reasons) likes wearing his hair in dreadlocks and he does not want to change his hairstyle to comply with UPS's uniform policy. And he — like the declarants who testify for him — got away with it. UPS told him he had to cut his hair to comply with UPS's policy, but he did not do it. Rather than help his cause, Plaintiff's Opposition actually crystallizes that this case has nothing to do with religious or disability-based discrimination or retaliation or harassment.

Plaintiff's Opposition fails to cure the fundamental defect in his case — he suffered no adverse employment action. He did not lose his job; he was not demoted; and he was denied no benefit. He didn't even cut his hair. He says only that he has not attempted to seek light duty work because he does not want to comply with UPS's *bona fide* appearance policy. But he has been denied no disability accommodation. There has been no consequence. For that reason alone — without considering another word of this Reply — the Court should grant UPS's summary judgment.

So, what does Lewis do to try to generate a case from nothing? Two things. First, he changes his story, diverting from sworn deposition testimony. For example:

- Lewis now asserts that he requested an accommodation (though he does not specify what) for his disability. (Opp. 14.) In deposition, he admitted that he never requested an accommodation for his disability. (Lewis Dep. 137:2-22.)
- Lewis now asserts that he told UPS managers about his religious beliefs. (Opp. 15-16.) In deposition, Lewis testified on numerous occasions that he never told anyone at UPS about his religious beliefs. (Lewis Dep. 59:6-9; 69:12-14; 170:21-171:20.)
- Lewis now claims that Mike Mullan accused him of faking his injury a week before he asked Lewis to cut his hair. (Opp. 4, 17.) However, Lewis accused *Alan Cheeks*, (who was not involved with the request that Lewis cut his hair) *not Mullan*, of making this comment. (Lewis Dep. 128:16-129:17.)

Second, Lewis advocates a claim that is not in his lawsuit. Lewis attempts to salvage his lawsuit by arguing that he was denied an accommodation for his disability. However, there is no "failure

CASE NO. C-05-02820 WHA (JCS) -1- UPS'S REPLY IN SUPPORT OF ITS MTN FOR SUMMARY JUDGMENT

1  to accommodate" claim in his Complaint.

2  UPS explains below why — despite Plaintiff's Opposition — the Court should grant UPS

3  summary judgment for any or all of the reasons set forth in UPS's moving papers.

4  **II.    LEWIS HAS NOT GOTTEN AROUND THE FACT THAT HE SUFFERED NO ADVERSE EMPLOYMENT ACTION**

5

6  The fundamental and primary flaw in Lewis' case remains — he suffered no cognizable

7  adverse employment action. As a matter of law, to establish a *prima facie* case of either

8  discrimination or retaliation, a plaintiff must establish that he was subjected to an adverse action.

9  *E.g., Flait v. North Am. Watch Corp.*, 3 Cal. App. 4th 467, 476 (1992) (plaintiff must establish

10  that his employer subjected him to adverse employment action to have a *prima facie* case of

11  discrimination or retaliation). Indeed, Lewis' Opposition and Declaration sum it up best:

12  • "[Lewis] never had any infractions, [was] never suspended, never reprimanded or

13  disciplined for anything." (Opp. 5.)

14  • "I am still employed by UPS and the issue of whether I will be terminated if I do not

15  cut my hair is still open." (Lewis Decl. 4:8-9.)

16  Lewis strains to satisfy this key element of a *prima facie* case by claiming that his

17  voluntary decision not to return to work is an "adverse action." (Opp. 13.) While not articulated

18  by Lewis, he is presumably trying to say that he was "constructively discharged" (despite the fact

19  that he is admittedly still employed by UPS). While a true "constructive discharge" may

20  constitute an adverse action, this theory fails here because Lewis jumped to the conclusion that

21  UPS would terminate him if he did not cut his hair. As a matter of law, precipitous resignations

22  (or refusals to return to work as the case is here) are not constructive discharges; employees are

23  required to remain on the job to see if the circumstances that are distasteful are remedied. *See,*

24  *e.g., Agnew v. BASF Corp.*, 286 F.3d 307, 310 (6th Cir. 2002) (an employee who quits a job in

25  apprehension that conditions may deteriorate later is not constructively discharged); *Tidwell v.*

26  *Meyer's Bakeries, Inc.*, 93 F.3d 490, 492-94 (8th Cir. 1996) ("To act reasonably, an employee has

27  an obligation not to assume the worst and not to jump to conclusions too quickly. An employee

28  who quits without giving his employer a reasonable chance to work out a problem has not been

CASE NO. C-05-02820 WHA (JCS)    -2-    UPS'S REPLY IN SUPPORT OF ITS MTN FOR SUMMARY JUDGMENT

1  constructively discharged.") (citations omitted); *Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536,
2  1539 (11th Cir. 1987) (no constructive discharge as matter of law where employee quit, even
3  though there was discrimination in her job assignment; she improperly "assume[d] the worst
4  and . . . jump[ed] to conclusions too fast").

5        For Lewis to conclude that he could not return to work was patently unreasonable. First,
6  he continued to work at UPS for 15 to 16 days after Mullan told him to cut his hair, well past the
7  5-day "deadline" he claims Mullan imposed for compliance. (Lewis Dep. 51:25-52:2; 109:3-
8  110:9; 111:20-112:2.) Indeed, *nothing* happened to Lewis during this time period. Therefore, it
9  was irrational for Lewis to assume that he could not return to work because of his hair. Second,
10 Lewis was a member of the International Brotherhood of Teamsters. He could not lose his job
11 without going through a long, protracted union grievance process. Third, the declarants who
12 submitted testimony with Plaintiff's Opposition prove the point. All say that they grew
13 dreadlocks or long hair; all say they were told to cut their hair; none did; none lost their jobs.
14 Fourth, Lewis' argument assumes that Mullan's February 2004 directive was the final decision on
15 the matter and fails to acknowledge the intervening events. After his conversation with Mullan,
16 Lewis purportedly submitted an unsigned request for a religious accommodation for his
17 dreadlocks through his lawyers. However, he never contacted anyone at UPS to find out if this
18 request had been received or approved. (*See* Lewis Dep. 60:15-23.) Mullan testified that he has
19 *no responsibility* for handling requests for religious accommodations, this is a function of the
20 Human Resources Department. (Mullan Dep. 73:9-18.) Accordingly, because Lewis' decision
21 not to return to work was objectively irrational, it cannot be construed as a "constructive
22 discharge" or as an adverse action.

23       Indeed, the only thing that ever happened to Lewis during his employment at UPS is that
24 on one, *single* occasion, he was asked to comply with UPS's dress code.[1] (Lewis Dep. 174:23-

---

[1] Lewis misrepresents the evidence by stating in his Opposition that Mike Mullan told him to cut his hair on two occasions, the second time being during a meeting with Jack Bookter, a Teamsters representative. (Opp. 6.) However, Lewis testified that Mullan was not present during this meeting with Bookter. (Lewis Dep. 26:21-27:13; Lewis testified that the only people present at that meeting were Eduardo Nuno, Frank Cademarti, and possibly Stan Reed.)

1  175:22.)  As a matter of law, this single conversation does not qualify as an adverse action.

2  *Thomas v. Dep't of Corrections*, 77 Cal. App. 4th 507, 511-12 (2000) ("one time events" do not

3  amount to an adverse employment action); *Beckwith v. Career Blazers Learning Ctr.*, 946 F.

4  Supp. 1035, 1046 (D.D.C. 1996) ("A request by an employer that an employee comply with a

5  dress code is not an adverse employment action.").  Accordingly, Lewis' discrimination and

6  retaliation claims must fail as a matter of law because he has not established (nor can he establish)

7  a *prima facie* case.

### III. LEWIS HAS NO CLAIM FOR "FAILURE TO ACCOMMODATE"

#### A. Disability Accommodation:  Lewis Admits He Never Asked For One

Lewis' failure to accommodate allegation fails initially for the simple reason that he never requested an accommodation for his purported "disability."  An employer's obligation to provide an employee with reasonable accommodation, logically, arises only when the employee requests one.  Cal. Gov't Code § 12940(n) (creating an obligation only "in response to a request for reasonable accommodation by an employee"); *Prilliman v. United Air Lines, Inc.*, 53 Cal. App. 4th 935, 954 (1997) ("[T]he employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation.").  Here, Lewis confesses that he never requested an accommodation for his disability, nor is he contending that UPS denied him any accommodation:

> Q.    Now, you're not making any contention that UPS denied you any sort of accommodation for your shoulder injury; correct?
>
> A.    No. . . .
>
> Q     Okay.  So, the only request that you're aware of that you made to UPS was Exhibit 1, to be allowed to wear your hair in dreadlocks; correct?
>
> A.    I never made any requests to UPS.

(Lewis Dep. 137:2-22).  Accordingly, Lewis' Opposition-created failure to accommodate disability claim fails.

#### B. Disability Accommodation:  Plaintiff's Complaint Asserts No Claim For This

The operative Complaint against UPS alleges just four claims:  (1) disability discrimination; (2) harassment and retaliation; (3) religious discrimination; and (4) intentional

1   infliction of emotional distress.  (Cmplt. ¶¶ 1-52.)  Nowhere does Lewis allege a "failure to

2   accommodate" claim.  (*Id.*)  On summary judgment, this Court is adjudicating the claims pled in

3   the operative complaint, not claims that could have been brought.  *Stallcop v. Kaiser Found.*

4   *Hosps.*, 820 F.2d 1044, 1050 n.5 (9th Cir. 1987) ("it is inappropriate for us to consider this

5   claim," when the plaintiff "never raised it as a cause of action."); *Whelihan v. Espinoza*, 110 Cal.

6   App. 4th 1566, 1576 (2003) ("The complaint serves to delimit the scope of the issues before the

7   court on a motion for summary judgment and a party cannot successfully resist summary

8   judgment on a theory not pleaded.") (citations omitted).

9          In any event, Lewis could not have included a claim for "failure to accommodate" in his

10  Complaint as he did not make this allegation in his administrative complaint before the

11  Department of Fair Employment and Housing ("DFEH").  Before suing an employer under the

12  FEHA, a plaintiff is required to exhaust his administrative remedies by filing a complaint with the

13  DFEH.  Cal. Gov't Code § 12965; *see Martin v. Lockheed Missiles & Space Co.*, 29 Cal. App.

14  4th 1718, 1724 (1994) ("To exhaust his or her administrative remedies as to a particular act made

15  unlawful by the [FEHA], the claimant must specify that act in the administrative complaint, even

16  if the complaint does specify other cognizable wrongful acts.").

17         Lewis does not dispute that a failure to accommodate claim is a "separate and distinct

18  theory of discrimination."  (Opp. 11.); *see also Bagatti v. Department of Rehabilitation*, 97 Cal.

19  App. 4th 344, 357 (2002) (the FEHA statutorily defines failure to provide reasonable

20  accommodation as a separate unlawful employment practice; a plaintiff may file a civil action

21  based on that unlawful practice provided a plaintiff has obtained a right-to-sue notice).  However,

22  he never made a "failure to accommodate" claim with the DFEH.  (*See*, Exh. B to Lewis Decl. in

23  Support of Opp.) (checking "retaliation" and "discrimination" but *not* "denied accommodation").[2]

---

[2] Lewis may argue that because his charge states that he was "[retaliated against] for needing reasonable accommodation" that he has exhausted his administrative remedies.  This argument fails for two reasons.  First, that statement is nothing more than another way of claiming disability discrimination.  In other words, he is using the term "reasonable accommodation" to indicate that his employer was aware that he had a disability.  Nothing in that statement suggests that he was denied any accommodation or that he ever requested an accommodation.  Second, as explained above, Lewis admits he never asked for disability accommodation.

C.  **Religious Accommodation: Lewis Admitted That His Hairstyle Was Not A _Bona Fide_ Requirement Of The Christian Religion**

In order to pursue a failure to accommodate a religious belief claim, an employee must demonstrate that he has a *bona fide* religious belief. *See Friedman v. S. Cal. Permanente Med. Group*, 102 Cal. App. 4th 39, 57 (2002) (*bona fide* religious belief is an essential element of a failure to accommodate religion claim). An employer is not required to "accommodate what amounts to a *purely personal* preference" of an employee. *Id.* Lewis confuses this simple issue by urging the court to look at the Equal Employment Opportunity Commission's ("EEOC") administrative guidance regarding what constitutes a religion. (Opp. 15.) He points out that the EEOC will define a "religion" as a belief system where an individual holds beliefs with the same strength of those who hold traditional religious views. (*Id.*) However, this guidance merely applies to situations where a plaintiff is seeking protection for a belief system that is not considered to be a "traditional" religion, such as veganism. *See generally Friedman*, 102 Cal. App. 4th at 66 (finding that veganism is not a religious creed entitled to protection under the FEHA, which has a far "less expansive definition of religion than that promulgated by the EEOC"). This case presents no issue about whether Christianity (Lewis' religion) is a religion.

Rather, the issue here is whether Lewis' decision to wear his hair in dreadlocks was based on a *bona fide* requirement of his religion (Christianity) or if it was merely a personal preference. *See, e.g., Tiano v. Dillard Dep't Stores, Inc.*, 139 F.3d 679, 682-83 (9th Cir. 1998) (an employer is not required to "accommodate the personal preferences of the employee"; employee failed to show that *the time she chose to go* on pilgrimage was part of her sincerely held religious beliefs). Indeed, Lewis' own deposition testimony makes it clear that his decision to wear dreadlocks reflected nothing more than a personal desire to wear his hair in that style. (*E.g.,* Lewis Dep. 98:6-21 "[I grew dreadlocks because my hair] grows this way naturally . . . Why not be natural? Why not allow it to grow? It grows. It's hair. [I grew dreadlocks] *because I wanted to*."). Moreover, Lewis presents no evidence in his Opposition to suggest that his Church or the Christian religion requires him to wear dreadlocks. While he may have had a dream about dreadlocks looking Christlike, he is not entitled to a religious accommodation as he has not

CASE NO. C-05-02820 WHA (JCS)      -6-      UPS'S REPLY IN SUPPORT OF ITS MTN FOR SUMMARY JUDGMENT

shown that wearing dreadlocks or looking like Christ is a *bona fide* requirement of his Christian religion.

### D. Religious Accommodation: Lewis Admitted That He Did Not Tell UPS His Desire Was Religion-Based

Additionally, Lewis' religious failure to accommodate claim must also fail because Lewis never told anyone at UPS about his religious beliefs. (Lewis Dep. 59:6-9: "Q. . . . But you never told UPS that you were requesting a religious exception to the dress code; correct? A. No."; 138:5-19: "Q. . . . And so you never had a conversation with UPS about your religion or your religious beliefs or anything like that, either? A. No. No. It was never, never questioned, never confronted. This document that they gave me came after the fact . . . ."). To have an actionable religious discrimination claim, the plaintiff must establish that his employer was aware of his religious belief. *Friedman*, 102 Cal. App. 4th at 45; *accord Soldinger v. Northwest Airlines*, 51 Cal. App. 4th 345, 370 (1996) ("In evaluating an argument the employer failed to accommodate an employee's religious beliefs, the employee must establish a *prima facie* case that he or she had a *bona fide* religious belief, of which the employer was aware.").[3]

## IV. LEWIS PROVIDES NO EVIDENCE OR ARGUMENT TO OVERCOME THE NUMEROUS OTHER REASONS WHY THE CLAIMS THAT HE DID PLEAD IN HIS COMPLAINT FAIL AS A MATTER OF LAW

### A. Disability Discrimination: Preempted By Labor Code Section 132a

As explained in our opening papers, Lewis' disability discrimination/retaliation claim fails for a second reason independent of his inability to establish an adverse action — it is preempted

---

[3] Lewis makes much of the fact that his lawyers submitted a partially completed and unsigned request for a religious accommodation while he was on a leave of absence from UPS in March 2005. To the degree that this could be considered a "request," it is not actionable because Lewis himself never pursued this request. The accommodation process is a two-way street. Where an employee fails to interact he cannot then turn around and blame the Company. *See EEOC v. AutoNation USA Corp.*, 52 Fed. Appx. 327, 329 (2002) (employee short-circuited the interactive process by resigning on the first day that discussions about his religious accommodation request ensued). Here, Lewis has not participated in the interactive process. First, he refused to even sign the form requesting an accommodation. (Lewis Dep. 59:20-60:14.) Second, he admitted that he never pursued the request, effectively dropping it. (Lewis Dep. 60:15-23: "Q. Now, did you ever hear back from UPS with respect to the request that you made in this form? A. No. Q. Did you ever call UPS to find out what happened to your request? A. No. Q. Did you ever follow up with UPS in any fashion after making this request? A. No.") Accordingly, he cannot pursue a claim where he failed to cooperate.

1  by Labor Code section 132a.  Lewis' sole argument on the preemption issue is that section 132a

2  does not preempt disability discrimination claims that are based on violations of the FEHA.  UPS

3  does not dispute this and in fact explains this very principle in Footnote 6 of its moving papers.

4  However, this is not what is going on here.  Lewis' deposition testimony is dispositive — he

5  complains of *workers' compensation* discrimination, not FEHA-disability discrimination.  Indeed,

6  Lewis testified on numerous occasions that he believes that UPS asked him to cut his hair *solely*

7  in retaliation for filing a workers' compensation claim; not because of any purported disability.[4]

8  (Lewis Dep. 122:15-123:13, 133:14-18, 143:7-144:7.)  Accordingly, these claims are clearly

9  preempted by 132a, which provides the exclusive remedy for all claims of workers' compensation

10 discrimination and retaliation.  Cal. Lab. Code §§ 132a, 3600 *et seq.*; *Gallo v. Board of Regents of*

11 *University of California*, 916 F. Supp. 1005, 1009 (S.D. Cal. 1995) ("Cal. Lab. Code § 132a

12 enumerates the worker's compensation remedies available to a worker discriminated against on

13 the basis of a *work-related* injury . . . all determinations [regarding 132a claims] are made by the

14 worker's compensation appeals board").

   **B.  Religious Discrimination:  Lewis Presents No Evidence That UPS's Legitimate Non-Discriminatory Request That He Comply With Its Uniform Policy Was A Pretext For Unlawful Discrimination**

17     As explained in our opening brief, UPS had a legitimate, non-discriminatory reason for

18 asking Lewis to cut his hair and Lewis has not shown otherwise.  UPS believes that it is essential

19 to its business success that its drivers — as the public representatives of UPS — project a clean-

20 cut, businesslike image.  Indeed, numerous courts have upheld an employer's right to have a strict

---

[4] Again, Lewis' Opposition improperly contradicts his sworn deposition testimony. *See D'Amico v. Bd. of Med. Exam'rs*, 11 Cal. 3d 1, 20-22 (1974); *Thompson v. Williams*, 211 Cal. App. 3d 566, 573 (1989); *Rivera v. S. Pac. Trans. Co.*, 217 Cal. App. 3d 294, 300 (1990).  Lewis testified that UPS asked him to cut his hair *solely* because he filed a workers' compensation claim. (Lewis Dep. 122:15-123:13: "Q. . . . Do you think UPS talked to you about your hair because of workers' comp issues?  A. I honestly . . . think . . . that the fact that . . . it was necessary for me to go back off from work, back on workmen's comp status . . . and have another surgery and be back on workmen's comp was a problem for UPS at that time.  Q. And you think that's the real reason why they talked to you about your hair; right?  A. Yes, I do."; 133:14-18 "Q. And they just pulled you aside [to tell you to cut your hair]. . . because of your workers' comp claim?  A. I honestly feel that there was some, yeah, the underlying issue about my workmen' comp that probably fueled this whole thing."; 143:7-144:7 ". . . it wasn't until after . . . it was deemed that I need[ed] to go back on light duty because of my injury that all of a sudden my hair's a problem").

dress code and have additionally recognized that "good grooming" and a "professional appearance" is a common corporate goal. (*See* MPA § V, fn7.) Lewis does not dispute this.

### 1. UPS Has A Clear Policy Regarding Its Uniform And Appearance Standards

Lewis attempts to show pretext by arguing that UPS's uniform policies did not explicitly describe how drivers with dreadlocks were to wear their hair. (Opp. 17.) Lewis not only fails to explain how the lack of a "dreadlock" policy shows pretext, but this argument ignores the fact that Lewis was well aware of the uniform policy and its requirements.[5] UPS has a clearly established "Uniform and Appearance" policy that requires its male drivers to wear their hair in a short, conservative style that does not extend beyond the top of the shirt collar in the back, or beyond the upper half of the ear in the front. (Lewis Dep. 212:5-10; Exh. 4.) This policy is written on a poster with pictures of compliant employees that is posted in the package Center where Lewis worked. (Lewis Dep. 160:3-19; Exh. 4.)

### 2. Lewis Cannot Create A Triable Issue By Quibbling With Mullan's Determination That His Hair Was Not Compliant With UPS's Policy

Lewis next challenges Mullan's determination that his hair was not compliant with UPS's policy and attempts to create an issue of pretext by arguing that his opinion was "subjective." Effectively, this is nothing more than a mere quibble over Mullan's fact-finding. However, without a showing that Mullan made this determination in bad faith, which Lewis has not (and cannot do), this argument does not preclude summary judgment. A plaintiff cannot create a triable question of fact by challenging the correctness of a decisionmaker's determination. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002) (plaintiffs sought to create a triable question of fact by quibbling over the alleged "offense"; the court rejected this logic and held that "[i]n judging whether [the employer's] proffered justifications were 'false,' it

---

[5] Lewis again ignores his deposition admissions and now claims in his declaration that UPS's Uniform and Appearance policy was somehow unclear. However, at deposition, he freely admitted to understanding the requirements of this policy. (Lewis Dep. 160:6-161:10, 212:5-16.) As explained elsewhere in this brief, Lewis cannot preclude summary judgment by changing his testimony now. *See D'Amico*, 11 Cal. 3d at 20-22; *Thompson v. Williams*, 211 Cal. App. 3d at 573; *Rivera*, 217 Cal. App. 3d at 300.

is not important whether they were objectively false (*e.g.*, whether [plaintiff] actually [was guilty as charged]). Rather, courts 'only require that an employer honestly believed its reason for its actions, even if the reason is 'foolish or trivial or even baseless.'").[6]

### 3. Lewis Cannot Create A Triable Issue By Misrepresenting The Record To Create A "Timing" Issue

Lewis' next attempts to show pretext by claiming that Mike Mullan accused him of faking his injury, not wanting to work and said that he was "not being a man" a week before he told him to cut his hair. (Opp. 4, 17.) However, this argument grossly misrepresents the facts and is yet another example of Lewis changing his deposition testimony in an effort to overcome summary judgment. Indeed, Lewis was questioned about this conversation that took place a week before he was asked to cut his hair. However, during his deposition, Lewis accused a UPS employee named *Alan Cheeks* of making these statements; *not* Mike Mullan:

> A. . . . I have been told that I wasn't man enough to do the job, that they had made mistakes, they were wrong about me, that the job was too physically demanding for me to do.
>
> Q. Who [specifically] told you all this stuff? . . .
>
> A. Alan Cheeks, C-H-E-E-K-S, told me that the job was probably too much for me to do, that I was not the right person for the job.
>
> Q. Anybody else tell you anything?
>
> A. Eduardo Nunez made reference to my injury and maybe that it was – I was not in the right type of employment.
>
> Q. Anybody else?
>
> A. No. . . .
>
> Q. And when did this conversation take place?

---

[6] Many other cases are to the same effect. *E.g., Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 777 (8th Cir. 1995); *Flores v. Preferred Tech. Group*, 182 F.3d 512, 515-16 (7th Cir. 1999) (Hispanic employee disputed whether she was in fact the instigator of certain misconduct, and hence properly discharged; the court affirmed summary judgment because the issue in a discrimination case is not whether the decisionmaker was factually right or wrong, but whether his conclusions were honestly held); *Waggoner v. City of Garland*, 987 F.2d 1160, 1165-66 (5th Cir. 1993) ("[T]he inquiry is limited to whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief.").

A. I'd say about a week before I was confronted about my hair. (Lewis Dep. 128:16-129:17) Additionally, Lewis testified that he had never previously conversed with Mullan. (Lewis Dep. 168:6-12: "Q. Did you have just that one interaction with Mike Mullan when he told you to cut your hair? A. No, it's not, no. Q. What other interactions did you have with Mike Mullan? A. I passed him in the hallways."). Lewis cannot manufacture the facts to preclude summary judgment. *See D'Amico v. Board of Med. Exam'rs,* 11 Cal. 3d at 20-22 (plaintiff cannot create a triable issue of fact can not be created by submitting a declaration in opposition to summary judgment that contradicts his deposition testimony); *Thompson v. Williams*, 211 Cal. App. 3d at 573 ("After-the-fact attempts to reverse prior admissions are impermissible, because a party cannot rely on contradictions in his own testimony to create a triable issue of fact."); *Rivera v. S. Pac. Transp. Co.*, 217 Cal. App. 3d at 300 ("Where . . . there is a clear and unequivocal admission by the plaintiff, himself, in his deposition . . . [the court is] forced to conclude there is no substantial evidence of the existence of a triable issue of fact.") (citing *D'Amico v. Bd. of Med. Exam'rs*, 11 Cal. 3d 1, 21 (1974)).

In any event, even if Mullan had questioned the veracity of Lewis' workers' compensation injury a week before asking him to cut his hair (which, incidentally, would not be out of line given that Lewis purportedly injured himself in October 2001 but did not report it until September 2002 — eleven months later), the timing alone is not evidence of pretext. In *Chen v. County of Orange*, 96 Cal. App. 4th 926 (2002), the court of appeal explained the fallacy of Lewis' argument:

> The trial court did not err in dismissing the retaliation claim. As we explain, it is well established that a plaintiff in a retaliation suit must show . . . some causal connection between an adverse employment action and the original complaint of discrimination. *Mere sequence is not enough* — that would be the classic logical fallacy of "post hoc ergo propter hoc" (after the fact, therefore because of the fact). In this case, [plaintiff] showed nothing but sequence in a context where there were obviously good and legitimate reasons [for the adverse action] . . . .

*Id.* at 931 (emphasis added); *see also id.* at 948 (if the law were otherwise, employees could reason as follows: "'Not doing your job well? Ax about to fall? Never fear: file a discrimination claim, no matter how meritless. Your employer will be afraid to take any action

because now you can sue for retaliation.'").[7]

### 4. Lewis' Purported Comparative Evidence Does Not Show Pretext

Lewis next attempts to show pretext by submitting the declarations of two[8] other drivers at UPS who wore dreadlocks. (Baily and Monlin Decls.) These declarations, if anything, support summary judgment. The declaration of Ron Monlin simply states that he had a workers' compensation claim in approximately 2002 (the same time as Lewis) and that in 2005 (three years later), some unidentified person told him that his "hat was too obscured and [he] needed to do something about [his] hair under the cap." (Monlin Dec., ¶ 1.) The declaration of Kym Baily is similar. He claims that after he filed a workers' compensation claim, UPS "changed its attitude about his locks." (Baily Dec., ¶ 4.) These declarations are legally off the mark because all they show is that other employees with dreadlocks were talked to about complying with the uniform policy. And like Lewis, each kept working and were not subjected to any adverse action. If anything, they simply illustrate a consistent application of UPS's uniform policy. Indeed, the issue is not how many other employees were spoken to about their hair, the issue is whether there were any (especially non-religious and non-disabled workers) who were *not* talked to about their hair despite being out of compliance with the uniform policy. *See, e.g., McDonnell Douglas*

---

[7] Many cases are to the same effect concerning the timing of an allegedly retaliatory act. See, e.g., Gagnon v. Sprint Corp., 284 F.3d 839, 851 (8th Cir. 2002) ("[M]ore than a temporal connection . . . is required to present a genuine factual issue on retaliation.") (citation and internal quotation marks omitted); Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C., 277 F.3d 882, 895 (7th Cir. 2001) (a plaintiff "needs more than a coincidence of timing to create a reasonable inference of retaliation"); Sauzek v. Exxon Coal USA, 202 F.3d 913, 918 (7th Cir. 2000) ("Speculation based on suspicious timing alone, however, does not support a reasonable inference of retaliation.").

[8] Two anecdotes are statistically insignificant. *Kuhn v. Ball State Univ.*, 78 F.3d 330, 332 (7th Cir. 1996) ("A plaintiff who wants a court to infer discrimination from the employer's treatment of comparable cases has to analyze a goodly sample. One is an anecdote, and several cases are several anecdotes. Judges do not find discrimination on such a thin basis."); *see also Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 663 (9th Cir. 2002) (court declined to "give . . . much weight" to plaintiff's statistical evidence because "the sample size is so small"); *Sengupta v. Morrison-Knudsen Co.*, 804 F.2d 1072, 1076 (9th Cir. 1986) (declining to consider employee's statistical evidence because "statistical evidence derived from an extremely small universe . . . has little predictive value and must be disregarded". . . [t]he problem with small labor pools is that slight changes in the data can drastically alter appearances.") (internal quotes and citations omitted); *Gibbs v. Consolidated Servs.*, 111 Cal. App. 4th 794, 801 (2003) (statistical sample too small; evidence of three terminated employees had no significance in showing pretext).

*Corp. v. Green*, 411 U.S. 792, 804 (1973) ("Especially relevant to [a showing of pretext] would be evidence that [similarly situated] employees involved in acts against [the employer] of comparable seriousness . . . were nevertheless retained or rehired.").[9]

### C. Retaliation: Lewis Cannot Overcome Summary Judgment By Directly Contradicting His Deposition Testimony

While not entirely clear from his Opposition brief, it appears from his declaration that in an attempt to save his retaliation claim, Lewis is now claiming that he engaged in protected activity by making it his "practice to advance the fair treatment of African-American drivers with UPS . . ." (Lewis Decl., 4:14-21.) This statement, however, is yet again directly contrary to Lewis' deposition testimony. Indeed, Lewis testified:

> Q. So other than the issues that we're dealing with in this lawsuit, you didn't do something else at UPS that you consider to be protecting the rights of African-Americans; correct?
>
> A. No.
>
> Q. Now, your lawsuit also says that you believe that you in particular had less favorable working conditions than whites. Is that something that you're alleging?
>
> A: No.

(Lewis Dep. 146:15-147:5.) Again, Lewis cannot create a triable issue of fact by contradicting his sworn deposition testimony. *See D'Amico*, 11 Cal. 3d at 20-22; *Thompson v. Williams*, 211 Cal. App. 3d at 573; *Rivera*, 217 Cal. App. 3d at 300. Accordingly, since Lewis has no evidence (other than his self-serving contradictory declaration) that he engaged in protected activity, his retaliation claim fails for this additional reason.[10]

---

[9] With these declarations, Lewis is presumably trying to draw a connection between filing a workers' compensation claim and UPS's enforcement of its dress code. However, this does not save his causes of action for FEHA-based disability or religious discrimination. If anything, they merely provide further support that Lewis is really claiming workers' compensation discrimination, which is preempted by Labor Code section 132a. *See* Section IV(A), *supra*.

[10] Lewis argues that Mike Mullan was the only person he could complain to about harassment presumably to explain why he did not engaged in any protected activity to support a retaliation claim. Not only is this argument legally insignificant as an actionable claim of retaliation requires a plaintiff to have engaged in protected activity (*see* MPA p. 11), it is yet another gross misrepresentation of Lewis' deposition testimony. Indeed, Lewis testified that he knew UPS prohibited discrimination and that it had an established 1-800 number hotline as another vehicle

(continued...)

### D. Harassment: Lewis Ignores The Law — He Fails To Show Severe Or Pervasive Harassment Based On Religion Or Disability

Lewis regurgitates his non-actionable failure to accommodate claim by using it as the basis for his "harassment" cause of action. This, as explained in UPS's moving papers, is legally insufficient. *See Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 64-65 (1996) ("[C]ommonly necessary personnel management actions . . . do not come within the meaning of harassment . . . . These are actions of a type necessary to carry out the duties of business and personnel management."). While Lewis argues that his harassment claim is based on a "course of conduct," he identifies nothing other than the single request that he cut his hair as the basis for this claim. (Opp. 17.)

### E. Emotional Distress: Lewis Does Not Dispute The Claim Is Superfluous

Lewis is correct that some courts have recognized an exception to the exclusive remedy provision of the Workers' Compensation Act where emotional distress results from conduct that violates the California Fair Employment & Housing Act ("FEHA"). *E.g., Accardi v. Superior Court*, 17 Cal. App. 4th 341, 347 (1993) (workers' compensation does not bar recovery for emotional distress injuries caused by unlawful discrimination). But this is circular reasoning. If Lewis succeeds in proving his FEHA claims (which, as explained above, he cannot), then his statutory claim provides him full relief, including emotional distress damages, punitive damages, and attorney's fees. In that event, this common law claim (which does not permit such full relief) adds nothing to the complaint and is duplicative. *E.g., Guz v. Bechtel Nat., Inc.*, 24 Cal. 4th 317, 352 (2000) (duplicative claim added nothing to complaint and was properly dismissed).[11]

---

(...continued)
besides an immediate manager for employee complaints of discrimination. (*See*, Monfredini Decl. filed in support of UPS's Summary Judgment Motion: Exhs. A: Lewis Dep. 156:10-159:1; C and D.)

[11] *See also Award Metals, Inc. v. Superior Court*, 228 Cal. App. 3d 1128, 1135 (1991) (when "allegations are virtually identical to the allegations contained in [another] cause of action . . . stating them in two causes of action . . . is merely duplicative pleading which adds nothing to the complaint by way of fact or theory."); *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) (allegations that simply seek the same damages or other relief already claimed in a companion cause of action may be disregarded as superfluous as no additional claim is actually stated).

Accordingly, this argument does not save Lewis' emotional distress claim and summary judgment is proper.

## V. ALTERNATIVELY, LEWIS FAILS TO SAVE ANY CLAIM FOR PUNITIVE DAMAGES

UPS demonstrated that summary judgment regarding Lewis' claim for punitive damages is required because he cannot satisfy the burden of showing by "clear and convincing evidence" acts of oppression, fraud or malice "on the part of an officer, director, or managing agent" of UPS. (*See* MPA § VII.) In his Opposition, Lewis attempts to bolster Mike Mullan's and Frank Cademarti's manager positions to those at a policy making level within UPS. (Opp. 18.) However, both Mullan's and Cademarti's managerial authority extended only to the North California District, which is only one of 59 Districts in the United States at UPS. While both of these individuals had the authority to interpret UPS policy within their District, neither had the authority to set corporate policy as required by *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 566-67 (1999). UPS also noted there was no evidence of "malice, oppression or fraud" here. (*See* MPA § VII.) Lewis fails to respond to this point, as he can cite no evidence that either Mullan or Cademarti were in any way out to get him. There is, then, no viable claim for punitive damages.

DATED: September 22, 2005     PAUL, HASTINGS, JANOFSKY & WALKER LLP


By:  /s/ Laura N. Monfredini
LAURA N. MONFREDINI
Attorneys for Defendant
UNITED PARCEL SERVICE, INC.