IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PAUL LEWIS,

    Plaintiff,

  v.

UNITED PARCEL SERVICE, INC.,
and DOES 1–100, inclusive,

    Defendants.
                         /

No. C 05-02820 WHA

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT IN FAVOR OF DEFENDANT**

## INTRODUCTION

In this diversity-removal action, defendant United Parcel Service, Inc., moves for summary judgment on all plaintiff claims. The motion is **GRANTED**.

## STATEMENT

Plaintiff Paul Lewis drove a UPS delivery truck. He went out on workers' compensation in September 2002. With the exception of two brief periods, he has remained on workers' compensation since. During his most recent stint of work, a labor manager, Mike Mullan, met with Lewis and Eduardo Nuño, another manager. During the meeting, Mullan threatened to fire Lewis unless he trimmed his dreadlocks. The dreadlocks, tucked under a UPS cap, forced it to bulge out.

1    About the same time, various unnamed UPS managers told Lewis that he "wasn't man enough to do the job." Another employee told him that the job was "probably too much" for him. Nuño told Lewis that he "was not the right person for the job." Mullan told Lewis that he was faking his injuries and did not want to work.

After the meeting, Lewis told UPS for the first time that he wore dreadlocks because of a religious belief. God instructed Lewis in a dream, Lewis now states, to grow dreadlocks so as to embody the values held by Jesus. The Book of Revelations, he states, described Jesus as wearing his hair like "wool."

Lewis made known his religious viewpoint to UPS via a request for religious accommodation. This was submitted after the meeting in March 2004. About that time, however, Lewis left again on workers' compensation. He remains on workers' compensation. He has not been fired. He has not trimmed his dreadlocks. UPS states that if and when Lewis advises that he is ready and willing to return to work, UPS stands ready and willing to engage in an interactive process to try to reach a religious accommodation over his dreadlocks.

The foregoing is the view of the summary-judgment evidence most favorable to plaintiff. All claims are based on state law. Subject-matter jurisdiction is based on diversity-removal jurisdiction.

**ANALYSIS**

Summary judgment is proper where the pleadings, discovery and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). A nonmoving party who bears the ultimate burden of proof at trial must "designate specific facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). It is not the task of the district court to scour the record in search of a genuine issue of triable fact. The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). A genuine dispute as to a material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. On summary judgment, the "evidence of the non-movant is to be believed,

2

and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252, 255 (1986).

### 1.    FIRST CLAIM: DISABILITY DISCRIMINATION.

To prevail on his first claim, Lewis must prove that UPS barred or discharged him from employment, or discriminated against him in "terms, conditions, or privileges of employment" on account of his physical disability or medical condition. Cal. Gov't Code § 12940(a). To make out a prima facie case, Lewis must show that he (1) suffered from a disability or medical condition; (2) was otherwise qualified to do his job; and (3) was subject to adverse employment action by UPS because of his disability or medical condition. *Finegan v. County of L.A.*, 109 Cal. Rptr. 2d 762, 767 (Cal. Ct. App. 2001).

UPS challenges the disability/medical-condition claim by alleging that Lewis has not suffered any "adverse employment action" and that he cannot show that UPS's enforcement of the facially neutral hair-length policy was a pretext for discrimination on the basis of his disability or medical condition. For purposes of this motion, UPS does not challenge Lewis's claims that he suffers from a disability or medical condition and that he is otherwise qualified to do his job.

#### A.    Adverse Employment Action.

Plaintiff claims that whether he suffered an adverse employment action is "a factual inquiry . . . that must be decided by a jury and not the court by way of summary judgment" (Opp. 13). He thus suggests that an essential element of one of his claims is immune from summary adjudication merely because it requires a factual inquiry. He offers no authority supporting this contention. His argument has no merit. The whole point of summary adjudication is to determine which claims have sufficient factual basis to warrant presentation to the jury. *See Celotex*, 477 U.S. at 323–24 ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."). Under Rule 56(c), the Court must determine whether there is a "genuine issue as to any material fact" that might control resolution of the adverse-employment-action element.

3

Under California law, an adverse employment action may be an "ultimate employment action" such as termination or demotion. It may also be anything else that is "reasonably likely to adversely and materially affect an employees's job performance or opportunity for advancement in his or her career." On the other hand, "a mere offensive utterance or even a pattern of social slights" is not sufficiently adverse to satisfy this element. If the action does no more than "anger or upset an employee," the claim must fail. *Yanowitz v. L'Oreal USA, Inc.*, 32 Cal. Rptr. 3d 436, 454–55 (2005); *see also McAlindin v. County of San Diego*, 192 F.3d 1226, 1238–39 (9th Cir. 1999) (holding that ostracism by co-workers and failure to keep job open for employee were not adverse employment action in lawsuit claiming disability discrimination in violation of FEHA and federal law).

A mere threat of termination is not an adverse employment action. *Nunez v. City of L.A.*, 147 F.3d 867, 875 (9th Cir. 1998). A threat combined with a systematic pattern of other negative treatment, however, may rise to the level of an adverse employment action. *Yanowitz*, 32 Cal. Rptr. 3d at 459–60.

The Ninth Circuit has found that a similarly "wide array of disadvantageous changes in the workplace constitute adverse employment actions." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). It has found, for example, the following employment actions to be adverse:

- "[t]ransfers of job duties and undeserved performance ratings," *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987) (Title VII national-origin discrimination); *see also Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1286 (9th Cir. 2001) (negative performance evaluations; FEHA and federal-law race, sex, national-origin and disability discrimination);
- dissemination of an unfavorable job reference, *Hashimoto v. Dalton*, 118 F.3d 671, 676 (9th Cir. 1997) (Title VII race and gender discrimination);
- exclusion from meetings, seminars and positions that would have made the employee eligible for salary increases; denial of secretarial support;

4

and a more burdensome work schedule, *Strothers v. S. Cal. Permanente Med. Group*, 79 F.3d 859, 869 (9th Cir. 1996) (FEHA and federal-law race and gender discrimination); and

• elimination of a flexible start-time policy, a program to let employees meet with supervisors to discuss workplace issues, and institution of more burdensome workplace procedures, *Ray*, 217 F.3d at 1238–39 (Title VII gender discrimination).

The main adverse action was a threat to terminate Lewis if he did not conform to UPS's "Personal Appearance Guidelines" (Lewis Dep. 18, Exh. 4). In addition, he was told that he "wasn't man enough to do the job" by "various UPS persons, management personnel," although Lewis did not attribute this comment to any specific person. Another UPS employee told Lewis the job was "probably too much" for him. Nuño told him that he "was not the right person for the job" (Lewis Dep. 129). Shortly before the termination threat, Mullan accused Lewis of faking his injuries (Lewis Decl. 3).[1]

In this case, a reasonable jury could find that Lewis suffered adverse employment action in the context of considering his claim of disability/medical-condition discrimination. There is evidence of more than "a mere offensive utterance or even a pattern of social slights," due to the fact that Lewis was threatened with termination. *See Yanowitz*, 32 Cal. Rptr. 3d at 454. Stated in the alternative, there is evidence of more than a mere threat of termination. *See Nunez*, 147 F.3d at 875. This was not a mere reprimand for a dress code violation, unaccompanied by a threat of discharge. *See Flannery v. Trans World Airlines*, 160 F.3d 425, 427–28 (8th Cir. 1998). The threat of termination and the insults Lewis suffered, when combined, are "reasonably

---

[1] UPS argues that this last statement should be disregarded because it contradicts Lewis's deposition testimony. A declaration made by the non-moving party after a motion for summary judgment may be disregarded if it contradicts the party's earlier deposition testimony. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1138 & n. 6 (9th Cir. 2000). In the instant case, however, there is no evidence in the record that Lewis contradicted himself on the issue of whether the manager ever made that accusation. In the deposition, Lewis stated that no one besides another co-worker and Nuño told him "anything." By "anything," however, Lewis apparently was referring to the following comments: (1) Lewis "wasn't man enough to do the job, (2) [UPS] had made mistakes, (3) UPS was wrong about [Lewis] and (4) the job was too physically demanding for [Lewis] to do" (Lewis Dep. 129). None contradicted the statement that Mullan accused Lewis of faking his injury.

5

likely to adversely and materially affect [his] job performance or opportunity for advancement in his or her career," *Yanowitz*, 32 Cal. Rptr. 3d at 454.

In the instant case, a reasonable jury could find that the insults and derogatory comments related to Lewis's physical capabilities, when combined with the threat to terminate him, constituted an adverse-employment-action element but for the issue next addressed.

### B. Adverse Action Not By Reason of the Disability.

A plaintiff in a disability-discrimination claim must prove that the action was taken *by reason of* a disability or medical condition. *Finegan*, 109 Cal. Rptr. 2d at 767; *see also* Cal Gov't Code § 12940(a) (barring discrimination on the basis of "physical disability, mental disability, [or] medical condition"). Here this element cannot be satisfied. *Significantly, the threat to fire concerned the dreadlocks, not any disability.* When UPS threatened to fire Lewis, moreover, UPS did not yet know that Lewis wore dreadlocks for religious reasons. Therefore, the threat was innocent under the law. Since the threat would be a critical part of any "adverse employment action," the claim fails.

Lewis claims that (1) the grooming policy is unclear as to how much hair can be kept under a UPS-issue cap, such that it could be enforced arbitrarily against certain employees as a pretext for other discrimination, (2) that other drivers with long hair were not threatened with termination, and that (3) he had been acknowledged for doing his job well (Opp. 17).

A UPS poster describing the standards for male employee hair stated that it must appear "businesslike." It did not address hair issues such as those of Lewis, whose long hair cause their caps to bulge. At some point, however, it is reasonable to assume that the mass of hair beneath such a hat would grow to such a size that most employers would consider it unprofessional in appearance. Not having any photographs of Lewis in his cap, this Court cannot determine whether Lewis's locks reached that point. Vagueness of the policy alone, however, without

6

1 something more, cannot sustain a claim that it was applied in a pretextual way to facilitate
2 discrimination.[2]

3 That Lewis received good performance evaluations prior to the reprimand does not
4 indicate pretext. It was entirely possible for him to have done a good job and yet also to have
5 been subject to discipline for wearing his hair too long. Taken collectively, the evidence of
6 pretext is too insubstantial to create any genuine issue of material fact.

7 Overall, Lewis has not shown that there is a genuine issue of material fact that an UPS
8 took any adverse employment action against him *because of* his disability or medical condition.
9 Defendant UPS is therefore granted summary judgment on the claim for disability or
10 medical-condition discrimination.

11     **2.**     **SECOND CLAIM: HARASSMENT AND RETALIATION.**
12     **A.**     **Harassment.**

13 It is unlawful for an employer to harass an employee because of his or her medical
14 condition or physical disability. Cal. Gov't Code § 12940(j)(1). Employers must take "all
15 reasonable steps necessary to prevent discrimination and harassment." Cal. Gov't Code
16 § 12940(k). To incur liability, the employer's harassment must be objectively severe enough
17 that it would interfere with a reasonable employee's work performance and seriously affect the
18 psychological well-being of a reasonable employee. The harassed employee must actually have
19 been subjectively offended as well. Conduct is not liable if it is "occasional, isolated, sporadic,
20 or trivial;" it must be "a concerted pattern of harassment of a repeated, routine or a generalized
21 nature." *Aguilar v. Avis Rent A Car System, Inc.*, 87 Cal. Rptr. 2d 132, 139 (1999).

---

[2] UPS's failure, in general, to terminate other drivers with long hair proves nothing in Lewis's favor. What Lewis needs is probative sample of *non-disabled* employees who, despite having hair like Lewis's, were *not* threatened with termination or otherwise subject to adverse employment actions. Lewis points to one such person. That worker was out with an injury for three weeks several years before he ever received a negative comment about his hair length (Monlin Decl. ¶¶ 1 & 3). Another employee suggested that his hair-related reprimand *was* related to an on-the-job injury (Baily Decl. ¶ 1). There was no information as to whether two other long-haired employees, Jeff Baker and Dennis Mathies, were disabled or injured (Mullan Dep. 37, 42, 43). UPS has 384,000 employees. *UPS Fact Sheet*, available at http://www.pressroom.ups.com/mediakits/companyinfo/ (last viewed October 4, 2005). Given that huge size, that Lewis was able to find one, possibly three, non-disabled UPS employees with dreadlocks not threatened with termination lacks probative value.

Lewis claims that he was harassed both because of his religion and because of his disability or medical condition (Opp. 18). The disability- or medical-condition harassment claim fails for the same reason that the more general claim of disability or medical condition discrimination fails: Lewis's failure to show that there is any basis on which a reasonable finder of fact could determine that disability or medical condition was the reason for the alleged harassment.

To make out a claim for harassment on the basis of his religion, Lewis must have suffered severe and pervasive harassment by reason of his religion. *See Nichols v. Azteca Rest. Enters.*, 256 F.3d 864, 872 (9th Cir. 2001) (harassment must be on account of victim's religion); *Aguilar*, 87 Cal. Rptr. 2d at 139 (conduct must be pervasive, not isolated). A necessary predicate to proving a nexus with religion is that the employer knew of the claimant's religion. *Friedman v. S. Cal. Permanente Med. Group*, 125 Cal. Rptr. 2d 663, 666 (Cal. Ct. App. 2002).

UPS, however, did not learn of this religious belief until *after* the threat to fire Lewis. UPS did not reiterate the threat after the meeting. The threat could not have been made on the basis of his religion. On its own, the Court has considered whether the Nuño declaration could be stretched to imply that Lewis informed UPS *during* the meeting of the religious nature of his hair length.[3] Even plaintiff's counsel, however, does not try to stretch the declaration that far. The reason seems clear. Lewis himself stated in his deposition that he did not remember having any conversation with any UPS manager in which he stated that he was growing his hair in order to be like Jesus. He stated that he never told UPS that he didn't want to cut his hair because of his religious beliefs.

For these reasons, no reasonable jury could find on the summary-judgment record that Lewis suffered harassment on the basis of his religious practices.

---

[3] Nuño described the meeting in paragraph two of his declaration. In the next paragraph, he began by stating "Lewis stated that he wore his hair in dreadlocks because of his religious beliefs." It is not clear that Nuño was still describing the meeting in that third paragraph, versus something that happened after the meeting (Nuño Decl. ¶¶ 2–3). The declaration was drafted by plaintiff's counsel. Given that fact and given that even she does not argue for this interpretation, the Court will not do so either.

8

### B. Retaliation.

An employer cannot harass, discharge or otherwise discriminate against any person because the person has opposed any practices forbidden under Section 12940.

After Lewis was threatened with termination if he did not cut his dreadlocks, he undertook actions that reasonably could be construed as opposing practices forbidden under FEHA, specifically disability, medical condition and religious discrimination. He filed a form with UPS requesting a religious accommodation that would allow him to continue wearing his hair long. He completed state administrative proceedings that led to a right-to-sue letter and the instant lawsuit. The question then is whether UPS retaliated against him for taking these actions. Lewis can point to no adverse UPS employment action that occurred after he took action to report UPS's allegedly unlawful actions. He has not been fired. UPS states it is willing to confer over the accommodation request if and when Lewis wishes to return to work. That he never received a response to his request for a religious accommodation is insufficient to constitute retaliation.

### 3. THIRD CLAIM: RELIGIOUS DISCRIMINATION.

Under FEHA, it is unlawful for an employer "to bar or to discharge" a person from employment, or to discriminate against a person in the "terms, conditions, or privileges of employment" because of his or her religious creed. Cal. Gov't Code § 12940(a). To establish religious-creed discrimination under FEHA, Lewis must show, among other things, that he had a bona fide religious belief and that the employer was aware of that belief. *Friedman*, 102 Cal. App. 4th at 45. Of course, he must still show that some adverse job action was taken against him. Cal. Gov't Code § 12940(a).

The adverse job element is dispositive. The earlier insults have no bearing because they arose before anyone at UPS knew that Lewis wore dreadlocks for religious reasons. In *Nunez*, moreover, the Ninth Circuit stated that a mere threat of termination is not an adverse employment action. That decision came in the context of a First Amendment retaliation claim, in which a police officer claimed that he was threatened with termination because he had reported to authorities that his department was allowing inexperienced police officers to take the

9

1   lieutenant's exam, in violation of official policy requiring all test-takers to have at least one year
2   of supervisory experience. *Nunez*, 147 F.3d at 869–70, 874, 875. Although that decision came
3   in the context of a First Amendment retaliation claim, this order finds *Nunez* controlling here.
4   There is therefore insufficient evidence for any reasonable jury to find that Lewis suffered any
5   adverse action by reason of his religion.

6   Lewis cites two Ninth Circuit decisions that state that a plaintiff makes out a prima facie
7   case of Title VII religious discrimination whenever (1) he had a bona fide religious belief, the
8   practice of which conflicted with an employment duty; (2) he informed his employer of the
9   belief and conflict; and (3) the employer *threatened him* with or subjected him to discriminatory
10  treatment, including discharge, because of his inability to fulfill the job requirements. *Heller v.*
11  *EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993) (emphasis added); *Lawson v. Wash. State*
12  *Patrol*, 296 F.3d 799, 804 (9th Cir. 2002). These statements were dicta. *Nunez* controls here.[4]

13  Lewis next invokes Section 12940(l), which bars employers from discriminating against
14  a person because of a conflict between his or her religious belief and an employment
15  requirement, unless it has explored ways of accommodating the religious practice and is unable
16  to reasonably accommodate those beliefs. This provision is distinct from Section 12940(a)
17  because it makes unlawful adverse employment action taken not because of the employee's
18  creed but rather because of a conflict between the creed and an employment requirement. Even
19  if the employer takes an adverse action because of such a conflict, it can escape liability by
20  showing that (1) it engaged in a good-faith attempt to reach an accommodation with the religious
21  individual but (2) was unable to do so because the accommodation would cause undue hardship
22  on the employer.

23  The analysis of whether there was an adverse employment action is identical under this
24  provision as under 12940(a), and so is the conclusion. Again, *Nunez* controls. Lewis suffered no

---

[4] In *Heller*, the plaintiff was fired without any preceding threat, so threats had no bearing on the court's holding. *Heller*, 8 F.3d at 1439. In *Lawson*, the Court held the plaintiff was not subject to any adverse action. The *Lawson* court also found that no threats were made against the plaintiff. *Lawson*, 296 F.3d at 805 & n.6. In *Nunez*, the holding that the officer had suffered no adverse employment action was determinative of his First Amendment retaliation claim.

more than a single threat of termination because of the conflict between his dreadlocks and UPS's employee-hair policy. Furthermore, UPS did not know Lewis had a religious basis for his hair length at the time he made the reprimand threat. UPS therefore could not have made the threat due to any conflict between Lewis's religious practices and a UPS work requirement. No reasonable jury could find that Lewis has a valid religious-accommodation claim.

### 4. FOURTH CLAIM: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

In order to prevail in a claim for intentional infliction of emotional distress, Lewis must prove that (1) UPS engaged in outrageous conduct directed at Lewis (2) while intending to cause him emotional distress, or while having a reckless disregard to the probability of causing him emotional distress, (3) that he suffered severe emotional distress, and (4) that UPS's tortious conduct had an actual and proximate causal link to the emotional distress. *Nally v. Grace Community Church*, 47 Cal. 3d 278 (1988); *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965 (1993). Conduct is extreme and outrageous when it exceeds all bounds of decency usually tolerated by society, and is especially calculated to cause, and does cause, mental distress. *Molko v. Holy Spirit Ass'n*, 46 Cal. 3d 1092 (1988).

Lewis offers insufficient proof on this claim. Instead, his claim is couched in conclusory legal terms that merely tailor the elements of an intentional infliction of emotional distress claim to the specifics of this case.

UPS suggests that Lewis cannot show enough "extreme and outrageous" conduct for a reasonable jury to find the company liable on this claim. The only conduct to which this claim can possibly refer is the threat to fire Lewis if he did not cut his hair, the alleged failure of UPS to explore religious accommodation for Lewis and the derogatory comments about Lewis's on-the-job capabilities. A threat to fire someone is unpleasant but not "extreme and outrageous." A mere failure to act on Lewis's request for accommodation is likewise too mild to support reasonably a finding for the plaintiff. The derogatory comments, while insulting, are not sufficiently coarse to fall outside the bounds of decent society.

11

In addition, there is little support for the requisite element that Lewis suffered severe emotional distress. He states that he has seen a therapist a few times but such visits are common for non-severe emotional issues, as well as for a variety of non-emotional issues.

Because there is no extreme and outrageous conduct, nor a genuine issue that Lewis suffered severe emotional distress, defendant must prevail.

## CONCLUSION

For the reasons stated above, defendant's motion for summary judgment is **GRANTED** with regard to all claims.

**IT IS SO ORDERED.**

Dated: October 13, 2005.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE